# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

WILLIAM JAMES SISKOS,
          Petitioner,

v.                                         CASE NO. 8:16-cv-3197-T-02CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,
          Respondents.

_____/

## ORDER

On November 8, 2016, Petitioner William James Siskos filed his petition under 28 U.S.C. § 2554 for a writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from a June 14, 2012, Florida state court conviction. *Id*. Petitioner filed an Amended Petition on December 30, 2016, and the operative Second Amended Petition on January 26, 2017. Dkts. 8 & 20. Respondent filed a response in opposition. Dkt. 25. Petitioner filed a reply. Dkt. 30. The Court finds that a hearing is unnecessary and denies the petition.

### Background

On July 9, 2010, William James Siskos was charged with second degree murder with a firearm, aggravated assault with a firearm, and carrying a concealed firearm. Dkt 26-4 at 19–20.  Petitioner filed a motion under §§ 776.013 & 776.032,

for what is known in Florida as a "Stand Your Ground" hearing. Fla. Stat. §§ 776.013 & 776.032 (2017). Dkt. 26-3 at 34–35. After an April 30, 2012, hearing on the "Stand Your Ground" motion the trial court denied the motion. Dkt. 26-11 at 76. On June 14, 2012 a jury convicted Siskos of second-degree murder and carrying a concealed firearm. Dkt. 26-9 at 26–29. He was sentenced to life in prison for second-degree murder with a twenty-five-year minimum mandatory and five-years for carrying a concealed firearm. *Id.* at 42–48. Petitioner appealed. Dkt. 26-17 at 28–42. On December 18, 2012, the state appellate court denied the appeal *per curium. Id.* at 44–45; *see also Siskos v. State*, 103 So. 3d 179 (Fla. 5th DCA 2012). The mandate was issued on January 11, 2013. Dkt. 26-17 at 47.

On July 30, 2013, Petitioner filed a "Petition Alleging Ineffective Assistance of Appellate Counsel" in the state appellate court. *Id* at 49. This was denied on December 31, 2013, and the rehearing was denied on March 5, 2014. Dkt. 26-18 at 29, 41.

Petitioner, on February 19, 2014, filed a Motion For Postconviction Relief under Florida Rule of Criminal Procedure 3.850. *Id.* at 43. Petitioner raised twelve claims of ineffective assistance of counsel that were denied on August 7, 2014. Dkt. 26-19 at 50–64. However, before the denial of those twelve claims, Siskos filed a thirteenth supplemental claim on August 1, 2014. Dkt. 26-21 at 4. Meanwhile, Petitioner appealed the denial of the first twelve claims.

On May 15, 2015, the state appellate court affirmed in part and reversed in part and remanded the case for further proceedings only on ground two of the twelve claims raised, finding that the record did not conclusively refute the claim. Dkt. 26-21 at 46–47; *see also Siskos v. State*, 164 So. 3d 737 (Fla. 5th DCA 2015). The mandate was issued on June 22, 2015. Dkt. 26-22 at 12.

On August 13, 2015, the state court held an evidentiary hearing on ground two. Dkt. 27-30 at 29. After the hearing, the state postconviction court denied ground two. *Id.* at 88. Petitioner appealed this ruling, which was affirmed *per curium* on August 2, 2016. Dkt. 28-2 at 2; *see also Siskos v. State*, 200 So. 3d 74 (Fla. 5th DCA 2016). The mandate was issued on October 4, 2016. Dkt. 28-3 at 27.

The thirteenth issue was denied by the lower court on September 25, 2015 and was affirmed on appeal on February 2, 2016. Dkt. 28-5 at 66; *see also Siskos v. State*, 186 So. 3d 1042 (Fla. 5th DCA 2016). The mandate was issued on March 24, 2016. Dkt. 28-6 at 30.

On November 8, 2016, Petitioner filed this Petition for writ of habeas corpus. Dkt. 1. Petitioner filed an Amended Petition on December 30, 2016 and a Second Amended Petition on January 26, 2017. Dkts. 8 & 20.

**Standards of Review**

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state

court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir.

2003). This type of review does not allow relief from a state court conviction on a

claim

> that was adjudicated on the merits in the State court proceedings unless
> the state court's decision was '(1) . . . contrary to, or involved an
> unreasonable application of, clearly established Federal law as
> determined by the Supreme Court of the United States; or (2) . . . based
> on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016)

(quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme

Court "as of the time of the relevant state-court decision." *Id.* at 1288–89.

"Contrary to" requires a state court conclusion "opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently

than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at

1289. (citations omitted) (alterations in original). The "unreasonable application"

clause applies only "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in

original).

A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id*. (citation omitted). AEDPA "requires federal habeas courts to presume correctness of the state court's factual findings unless applicants rebut this presumption with clear and convincing evidence." *Id*. (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id*. (citation and internal quotation marks omitted). Further, this standard even applies if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr*., 278 F.3d 1245, 1254 (11th Cir. 2002).

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied

*Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

**Discussion**

A. <u>Timeliness</u>

Federal habeas petitions are subject to a one-year statute of limitations. 28 U.S.C § 2244(d)(1) (2018). It begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" *Id.* § 2244(d)(1)(A). The clock stops running for the "time during which a properly filed application for State post-conviction . . . judgment or claim is pending[.]" *Id.* § 2244(d)(2).

Petitioner's conviction became final on January 11, 2013. This started the one-year state of limitation. The clock stopped on July 30, 2013 when Petitioner filed his "Petition Alleging Ineffective Assistance of Appellate Counsel" in the state appellate court. Dkt. 26-17 at 49. Petitioner had pending motions from July 30, 2013, until October 4, 2016, when the mandate from the denial of his postconviction motion was issued. Dkt. 28-3 at 27. On November 8, 2016, Petitioner filed the instant federal habeas petition. Dkt. 1. This Petition is within the one-year requirement and is timely.

B. Merits

Petitioner raises three grounds for relief in his Second Amended Petition.

Dkt. 20. The Respondent rebuts each of these grounds as being unmeritorious. Dkt.

25. The Court will address each ground in turn.

1. Ground One

In Ground One, Petitioner raises a claim of "substantive incompetency."

Dkt. 20 at 6.  Petitioner argues that the October 27, 2011, medical report by Dr.

Matos combined with the Petitioner's federally adjudged mental illness shows

evidence of his incompetency at the time of trial and, therefore, Petitioner was tried

and convicted in violation of the Fourteenth Amendment. Dkt. 20 at 13–35.

Petitioner claims he was denied his right to a competency hearing, and his rights

under the United States Constitution and the Florida Constitution were violated

because he was forced to undergo criminal judicial proceedings while legally

incompetent. *Id*. This claim was raised in Petitioner's Rule 3.850 motion and was

denied. Dkt. 26-19 at 50–53. The denial was affirmed on appeal and is therefore

exhausted for federal habeas purposes. Dkt. 26-21 at 46–47

The Due Process Clause of the Fourteenth Amendment prohibits states from

trying and convicting mentally incompetent defendants. *James v. Singletary*, 957

F.2d 1562, 1569–70 (11th Cir. 1992). Like other fact determinations on federal

habeas review, a state court finding that the defendant was competent to stand trial

is "presumed to be correct and may not be overturned if it is fairly supported by the record." *Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir. 1995). "The test for determining competence to stand trial is 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.* at 1106 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

There are two types of incompetency claims for federal habeas review: substantive and procedural. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competence was put at issue. *Id*. "To prevail on the procedural claim, 'petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial.'" *Id.* (quoting *James*, 957 F.2d at 1572 n.15).

"A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent." *Id.* "A petitioner who presents 'clear and convincing evidence' creating a 'real, substantial and legitimate doubt' as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim." *Id.* (quoting *James*, 957 F.2d at 1573).

First Petitioner has failed to establish a procedural incompetency claim.

Here, Petitioner did not establish that the state trial judge ignored facts raising a

"bona fide doubt" regarding the Petitioner's competency to stand trial. The

postconviction court found that, contrary to the Petitioner's assertions, he "was not

deemed incompetent by an administrative law judge." Dkt. 26-19 at 52. Also, the

court found that nothing in the record established that the Petitioner was

incompetent to stand trial or that his counsel was ineffective for failing to request a

competency hearing. *Id.* And, while the Petitioner was entitled to disability

benefits for his anxiety and post-traumatic stress disorder ("PTSD"), this does not

establish that he could not reasonably understand the proceedings against him or

aid his counsel in his defense. *Id.*

Approximately ten years before these events, Petitioner was first examined

by Dr. Matos, a psychiatrist, because of an incident that happened at his work. This

is when Dr. Matos initially diagnosed Petitioner with PTSD. Dkt. 26-10 at 76.

After first meeting with Petitioner and discussing his PTSD, Petitioner's trial

counsel had him examined by Dr. Bursten for mitigation purposes. Dkt. 27-30 at

61. Dr. Bursten reported that Petitioner was depressed and had anxiety, but that he

was not insane.[1] *Id.* at 61–62. Dr. Bursten further found that Petitioner was

---

[1] The issues of insanity and competency were combined at both the pretrial and postconviction
stages. However, Petitioner only brought a competency claim in this Ground of his federal

competent to stand trial. *Id.* at 63. But Dr. Bursten recommended that Petitioner's

trial counsel gather more information about the Petitioner's PTSD.

Petitioner's trial counsel located Dr. Matos after Dr. Bursten's

recommendation so Dr. Matos could evaluate Petitioner again. *Id.* at 67. Dr. Matos

met with Petitioner at the Hernando County jail prior to his trial to examine him.

Dkt. 26-10 at 79. Dr. Matos believed that Petitioner was still suffering from PTSD.

*Id.* at 80. However, Dr. Matos testified prior to trial at the "Stand Your Ground"

hearing that Petitioner was competent to stand trial. *Id.* at 90. Dr. Matos further

testified that he did not believe that Petitioner's PTSD qualified as insanity because

"he was not psychotic . . . he was not delusional[.]" *Id.*

At the postconviction evidentiary hearing, the postconviction court found

that Petitioner's counsel met with Petitioner shortly after his arrest. Counsel

believed from the outset that Petitioner's version of events was that he was

defending himself and that he may have been influenced by his PTSD. Dkt. 27-30

at 82–88. Petitioner's counsel had worked with approximately a thousand

defendants in her eight years as a public defender and did not believe, based on her

interactions with Petitioner, that there was an insanity or competency issue

presented. *Id.* at 59–60, 73–74, 76, 82–83. The postconviction court found Dr.

---

petition. As such, while this Court will include mentions of insanity for the purpose of
completeness, only competency is at issue here.

Peter Bursten's report credible when he determined that Petitioner was competent to stand trial. *Id.* at 83–85. Further the postconviction court found that Petitioner was competent because of Dr. Matos's testimony at the "Stand Your Ground" evidentiary hearing. *Id.* at 86–87. The record reflects that the state court's finding of competency to stand trial was reasonable.

Second, Petitioner has not presented "clear and convincing evidence" creating a "real, substantial and legitimate doubt" that he was, in fact, tried while incompetent, therefore substantive due process was not violated. *James*, 957 F.2d at 1573. At the state court evidentiary hearing, Petitioner acknowledged that he participated in putting on the defense and stated that he was defending himself. Dkt. 27-30 at 49. Petitioner continuously maintained a self-defense theory in conjunction with PTSD. *Id.* at 53–54, 69–70. From the beginning, Petitioner's story was that he was defending himself and had been influenced by a diagnosis of PTSD or a history of PTSD. Petitioner's trial counsel noted that she had no indication that competency was at issue and relied on expert testimony from Dr. Bursten that there was "<u>NO</u> evidence of incompetency or insanity." Dkt. 27-30 at 84 (emphasis in Dr. Bursten's original report).

Finally, to the extent Petitioner is making an ineffective assistance of counsel claim in Ground One, this must also be denied. The postconviction court

found that Petitioner's trial counsel did not act deficiently. The record, as discussed above, reflects that this finding was reasonable.

The record supports the state postconviction court's ruling. The postconviction court's ruling was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts considering the evidence presented. Consequently, Ground One is denied.

2. Ground Two

In Ground Two, Petitioner raises a claim of ineffective assistance of counsel.[2] Dkt. 20 at 7. Petitioner argues that his trial counsel failed to adequately follow-up on his federally adjudicated mental disability and present an insanity defense. *Id.* at 35–41. Petitioner claims that a report by Dr. Matos was withheld from him in violation of his rights. *Id.* at 39. Petitioner also claims that because this report by Dr. Matos contains the terminology "schizoid traits" and because Petitioner's trial counsel decided to proceed on a self-defense justification instead of an insanity defense, his trial counsel's representation fell below an objectively reasonable standard of performance. *Id.* at 36–38.

---

[2] To the extent Petitioner is making an actual innocence claim, he has failed to meet the extraordinarily high threshold required to establish a freestanding actual innocence claim. *Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008) (citing *House v. Bell*, 126 S. Ct. 2064, 2087 (2006)).

Respondent argues that Petitioner's trial counsel made a reasonable strategic decision to pursue self-defense after investigating an insanity claim and finding it was not a viable defense strategy. Dkt. 25 at 22. Respondent points out that a self-defense strategy and an insanity defense strategy are inconsistent theories based on contradictory mental states. *Id*. Respondent continues that even if the report from Dr. Matos was withheld from Petitioner, it provides nothing new given what defense counsel already knew and the report does not prove actual innocence. *Id*.

Petitioner brought this ineffective assistance of counsel claim in his Rule 3.850 motion and it was denied. Dkt. 26-18 at 50–55. On appeal, this claim was reversed and remanded for further proceedings because the trial court relied on a record that did not conclusively refute the claim. Dkt. 26-21 at 46–47. The postconviction court subsequently held an evidentiary hearing on the matter and again denied the claim. This ruling was affirmed *per curium* and is therefore exhausted for the purpose of federal habeas review. Dkt. 28-2 at 2.

The state postconviction court found that trial counsel had to make a choice between insanity and self-defense. Dkt. 27-30 at 87. For insanity a defendant must take the position that he did not appreciate the nature and consequences of his actions. *Id.* While for self-defense a defendant must take the position that he appreciated his actions but there was a reason for them. *Id.* The postconviction court found that defense counsel "investigated the possibility of an insanity

defense, but it was not pursued because it was not a viable defense strategy." *Id.* at 87–88. And that this was a strategic decision that was "reasonable and well within an objective reasonable defense attorney's standard." *Id.* at 88. The postconviction court found there was no deficient performance and denied the claim.

After review of the record and applicable law, the Court concludes that Petitioner is not entitled to relief on this claim. The postconviction court's conclusion that trial counsel's decision to pursue self-defense did not constitute deficient performance was not unreasonable in its application of the law or determination of the facts. And, in any event, Petitioner's counsel was not ineffective.

In order to prevail on a claim that his trial counsel was ineffective, Petitioner must prove that counsel's performance was deficient and that the deficient performance prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Moreover, the Supreme Court has noted, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). (internal quotation marks and citations omitted). "It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence." *Nance v. Warden Georgia Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019).

After an evidentiary hearing, the state postconviction court denied

Petitioner's ineffective assistance claim. Dkt. 27-30 at 83–88. The state court

found that trial counsel, after reviewing available medical reports, made the

reasonable strategic decision to pursue and present the defense of self-defense. *Id*.

"[S]trategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690.

Because arguments based on self-defense and on insanity rely on

contradictory mental states, Petitioner's counsel needed to choose the single most

viable defense. Petitioner's counsel was aware of the Dr. Matos's report at time of

trial—along with the original report by Dr. Bursten—and chose to argue self-

defense. Dkt. 27-30 at 56–77. In fact, the state postconviction court noted that

Petitioner was not only persistent in his self-defense theory but also actively

participated in preparation of this defense. *Id.* at 85. Petitioner's counsel—

seemingly together with Petitioner—made the reasonable strategic decision to

argue self-defense rather than insanity. Accordingly, the Court concludes that

Petitioner is not entitled to relief on Ground Two.

   3.  Ground Three

In Ground Three, Petitioner argues that the prosecutor "committed fraud,

collusion or deceit . . . by instructing [the state trial court and the jury that] they

must determine [Petitioner's] immunity . . . based on fraudulent and abridged

immunity law[.]" Dkt. 20 at 41. Petitioner points out that the Florida justifiable use of force statute says that "[a] person who uses or threatens to use force as permitted in § 776.012, § 776.013, <u>or</u> § 776.031 is justified in such conduct and is immune from criminal prosecution." Fla. Stat. § 776.032(1) (2010) (emphasis added). Petitioner argues that the prosecutor used the word "and" instead of "or" in a written pleading entitled "State's Response To Defendant's Claim Of Immunity From Prosecution Under Florida Statute 776.013 & 776.032." Dkt. 20 at 43–44.

Upon review, the prosecution stated, "the trial court must then look at § 776.012, Fla. Stat. (2010), § 776.013, Fla. Stat. (2010), <u>and</u> § 776.031, Fla. Stat. (2010), to determine if the force used by [Petitioner] was justified under law." Dkt. 26-3 at 45 (emphasis added). Here, the prosecution used the word "and" instead of "or"; however, in context, this does not change the meaning. The prosecution was proposing, correctly, that any of the three statutes could apply in this case and that the court should look at each of them and determine which one applies. The state court only applied the single, relevant statute, § 776.013(3), which states:

> [a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Fla. Stat. § 776.013(3) (2010). After an evidentiary hearing on the "Stand Your Ground" motion, the state trial court—citing only to § 776.013(3)—found the

Petitioner engaged in an unlawful activity—carrying a concealed weapon without a permit, a third-degree felony. Dkt. 26-11 at 69–77. The trial court stated that "based upon a preponderance of the evidence, I find that the [Petitioner] is not entitled to the presumption of a reasonable fear, and he's not entitled to immunity of prosecution under the Stand Your Ground Law." *Id*. at 76.

Contrary to Petitioner's claim, the jury was not given this instruction. It was merely an argument contained in a written document in response to Petitioner's immunity claim and was not an error. As for the statutes, the state trial court referred to the correct language of the relevant section of the Florida Statutes when denying the immunity claim. *Id.* at 69. The court clearly understood and acknowledged the relevant statute in its conclusion. Substantial evidence was presented that Petitioner was engaged in unlawful activity at the time of the incident and was therefore not entitled to immunity. Petitioner is not entitled to federal habeas relief on Ground Three.

**Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336

(2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

### Conclusion

The Court denies Petitioner's Second Amended Petition with prejudice. Dkt. 20. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on March 24, 2020.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO:**</u>
Counsel of Record
Petitioner, pro se